IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BESTWAY INFLATABLES & MATERIAL CORP., | ) ) ) | |
| Plaintiff, | ) ) | No. 24 C 11696 |
| v. | ) ) ) | Judge Robert W. Gettleman |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PATNERSHIPS, AND UNICORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

On March 13, 2025, this court entered and continued plaintiff's motion for entry of default and default judgment (Docs. 36, 37, 39). Plaintiff asks the court to reconsider its decision to enter and continue to the motion under Fed. R. Civ. P. 59(e). (Doc. 40). Rule 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P 59(e). Rule 54(a) provides that a "'[j]udgment' as used in these rules includes a decree and any order from which an appeal lies." Fed. R. Civ. P. 54. The entry and continuance of a motion is not a final, appealable judgment. Cf. HSBC Bank USA, N.A. v. Townsend, 793 F.3d 771, 775 (7th Cir. 2015) (describing a final judgment for purposes of 28 U.S.C. §1291 as one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment") (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)). Thus, reconsideration under Rule 59(e) is inappropriate. See generally Borrero v. City of Chicago, 456 F.3d 698, 701 (7th Cir. 2006).

1

Although plaintiff fashioned its motion as pursuant to Rule 59(e), the court will consider it as a motion to reconsider under the court's inherent power to modify interlocutory orders in a pending case before final judgment. See Peterson v. Lindner, 765 F.2d 698, 704 (7th Cir. 1985) (discussing "the court's inherent power to modify or rescind interlocutory orders prior to final judgment"). As the Seventh Circuit has explained, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." Caisse Nationale de Credit Agricole v. CBI Industries, Inc., 90 F.3d 1264, 1269 (7th Cir. 1996). Here, plaintiffs argue that the court's March 13, 2025, ruling was a "manifest error of law." For the reasons explained below, the motion for reconsideration is denied. Because plaintiff is not alone in its misunderstanding of the relationship between Fed. R. Civ. P 4(f), the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Hague Convention"), and default judgments, the court will provide some explanation.[1]

To begin: Rule 4(f) is a rule about service; it does not govern default judgments. The Hague Convention contains, among other provisions, rules about both service and default judgments. Plaintiff devotes much of its briefing to arguing that service was appropriate under Rule 4(f)(3). Plaintiff reminds the court that many courts, including this one, have permitted alternative service of process under Rule 4(f)(3), and that the Hague Convention does not preclude service by email. On these issues, the court agrees with plaintiff. See e.g., MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., No. 08 CV 2593, 2008 WL 5100414, at *2 (N.D. Ill. Dec. 1, 2008) (finding that "the Hague Convention does not prohibit service by e-mail or

---

[1] The court has observed that misunderstandings of the relationship between Fed. R. Civ. P 4(f), the Hague Convention, and default judgments are common in similar cases on this court's docket.

2

facsimile"); Facebook, Inc. v. Banana Ads, LLC, No. C-11-3619, 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012) (similar); see generally Fed. R. Civ. P. Rule 4(f)(3) (permitting service on individuals abroad "by other means not prohibited by international agreement, as the court orders").

But from this premise—that service was appropriate under Rule 4(f)(3)—plaintiff makes an unsubstantiated leap to the conclusion that when seeking a default judgment, "the Hague Convention [does] not apply in this matter." But there is no language in Rule 4 that purports to govern the applicability of a treaty or the conditions under which a court may grant a default judgment. Instead, the applicability of the Hague Convention is governed by its first article, which reads:

> The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad. This Convention shall not apply where the address of the person to be served with the document is not known. 20 U.S.T. 361, Art. 1.

Just because alternate service is permitted under Rule 4(f)(3) does not mean that the Hague Convention magically disappears, as plaintiff seems to wish.[2] Instead, in cases where it applies, the Hague Convention governs the conditions under which a court may grant default judgment. These conditions relate to the method(s) of service plaintiffs choose to employ. Article 15, which sets out these conditions, is reproduced in full below:

> Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that –

---

[2] Nevertheless, it bears repeating the textually obvious: the Hague Convention "shall not apply where the address of the person to be served with the document is not known."

    a)    the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or

    b)    the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,

and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

Each Contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled –

    a)    the document was transmitted by one of the methods provided for in this Convention,

    b)    a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

    c)    no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.  20 U.S.T 361, Art. 15.

    Article 15 sets out two sets of conditions that each permit a court to grant default judgment.  Put more simply, from the perspective of a plaintiff, Article 15 creates two separate "routes" to secure a default judgment.

    Under "route one," a plaintiff serves a foreign defendant "by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons

who are within its territory" or verifies that "the document was actually delivered to the defendant or to his residence by another method provided for by this Convention."[3] If a plaintiff has served defendant in either of these two ways and "service or the delivery was effected in sufficient time to enable the defendant to defend," then the court can grant default judgment.

Under "route two," a plaintiff first transmits the service document "by one of the methods provided for in this Convention." After such service, if "a period of time of not less than six months, considered adequate by the judge in the particular case" has passed and "no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed," then the court can grant default judgment.

Thus, no matter what service a court authorizes under Rule 4(f)(3), plaintiffs still must comply with the requirements of the Hague Convention if they seek to secure a default judgment. Despite plaintiff's arguments to the contrary, this reading of the Hague Convention is neither novel nor a "manifest error of law." The Supreme Court recognized nearly four decades ago that "compliance with the Convention is mandatory in all cases to which it applies," and that "Articles 15 and 16 provide an indirect sanction against those who ignore it." Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 705 (1988). Here, plaintiff has run up against precisely that "indirect sanction." Rule 4(f) was not designed to provide an end run around the requirements of the Hague Convention as plaintiff seems to think. Instead, it was drafted with compliance with the Hague Convention explicitly in mind and with full recognition of the effect

---

[3] The "methods provided for" in the Hague Convention are primarily described in Articles 3-4. Generally, plaintiffs serving defendants abroad must send the service documents to the designated "Central Authority" of the foreign state, which is then tasked with serving defendants. See 20 U.S.T 361, Arts. 3-4.

of Article 15. See Fed. R. Civ. P. 4(f) advisory committee's notes to the 1993 amendment ("The Hague Convention furnishes safeguards against the abridgment of rights of parties through inadequate notice. Article 15 provides for verification of actual notice or a demonstration that process was served by a method prescribed by the internal laws of the foreign state before a default judgment may be entered.").

To summarize: Rule 4(f) says nothing about the applicability of the Hague Convention or default judgments. A court's prior approval of alternative service under Rule 4(f)(3), such as email service, has no bearing on the applicability of the Hague Convention to a future motion for entry of default judgment. If a plaintiff seeks to secure default judgment against a defendant to which the Hague Convention applies, then they must successfully embark on one of the two "routes" set out in Article 15.

Zooming out from the formal legal strictures of service under the Hague Convention, the court understands the reality on the ground. The Northern District of Illinois is inundated with so-called "Schedule A" cases. See, e.g., "Schedule A Cases Continue to Rise in the Northern District of Illinois," Lex Machina Blog, July 24, 2024 ("In 2023, 80 percent of all design patent cases filed against Schedule A defendants in the U.S. were filed in the Northern District of Illinois."); "How to Recover Attorneys' Fees in a Schedule A Trademark Case in the Northern District of Illinois," Sheppard Mullin Intellectual Property Law Blog, May 10, 2024 ("In recent years, a substantial number of 'Schedule A' trademark infringement cases have been filed in the Northern District of Illinois.").

The court has little sympathy for a vast majority of defendants in Schedule A cases, who are mostly counterfeiters from abroad that operate through networks of elusive online shops.

And the court also understands that conducting service by the methods provided for in the Hague Convention can be fruitless. See Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A", 391 F. Supp. 3d 816, 824 (N.D. Ill. 2019) (wherein plaintiffs submitted "an affidavit filed in a case in Delaware averring that China's central authority takes one to two years to serve process"). Despite these challenging circumstances, courts cannot ignore the law for the convenience of plaintiffs in (mostly) ex parte proceedings. Instead, plaintiffs in these cases must follow the "routes" outlined in the Hague Convention to secure default judgments. For relief beyond what is currently provided for by law, plaintiffs should petition lawmakers, not courts. Cf. White-Smith Music Pub. Co. v. Apollo Co., 209 U.S. 1, 18, (1908) ("[S]uch considerations properly address themselves to the legislative, and not to the judicial, branch of the government.").

Returning to the specific motion at hand, the court has only one point to add. The court's March 13, 2025, order entered and continued plaintiff's motion for default judgment because six months had not elapsed since the transmission of the service document. But, as the discussion above reflects, there is another reason that the court will not be able to grant plaintiff's motion for entry of default judgment. At least to the court's present knowledge, plaintiff has not served defendants "by one of the methods provided for in [the Hague] Convention." 20 U.S.T 361, Art. 15. Thus, as of the present, plaintiff has failed to meet two of the three conditions required to secure default judgment under what this court has referred to as "route two" of Article 15. Of course, plaintiff is free to pursue either of the routes provided for in Article 15 to secure default judgment.

7

## **CONCLUSION**

For the reasons above, plaintiff's motion for reconsideration (Doc. 40) is denied.

        **ENTER:**

        **Robert W. Gettleman**
        **United States District Judge**

**DATE: June 17, 2025**